**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

Jonathan Fleisig and Condor Alpha Asset Management

*Plaintiffs,*

-against-

E D & F Man Capital Markets, Inc. and Paragon Global Markets, LLC

*Defendants.*

---------------------------------------------------------------X

Case No. 19-CV-8217

**COMPLAINT**

**JURY TRIAL DEMANDED**

## PRELIMINARY STATEMENT

Plaintiffs Jonathan Fleisig ("Mr. Fleisig"), and Condor Alpha Asset Management ("Condor Alpha," or collectively "Plaintiffs") by and through their counsel, Conway & Conway, brings this action for damages and other legal or equitable relief against Defendants E D & F Man Capital Markets, Inc. ("E D & F Man") and Paragon Global Markets, LLC ("Paragon," or collectively "Defendants"), for (1) compliance supervision failures in allowing an unregistered compliance officer to improperly trade Plaintiffs' customer accounts in violation of the common law and E D & F Man's own internal policies, and (2) any other claim(s) that can be inferred from the facts set forth herein.

## JURISDICTION

1. Plaintiff Jonathan Fleisig is a United States citizen and a resident of the state of Connecticut. Mr. Fleisig resides at 5 Michelle Lane, Westport, CT 06880.

2. Plaintiff Condor Alpha Asset Management is a corporation organized and existing under the laws of the state of Connecticut. Plaintiff Jonathan Fleisig is the sole shareholder.

3. Defendant E D & F Man is a domestic corporation with a principal office located at 140 East 45th Street, 10th Floor, New York, NY 10017.

4. Defendant Paragon is a domestic corporation with a principal office located at 233 Broadway #1700, New York, NY 10279.

5. Pursuant to 28 U.S.C. § 1332(a) this Court has jurisdiction over this matter, as Plaintiffs and Defendants are citizens of Connecticut and New York respectively, and the amount in controversy is not less than $2,029,659.00.

## STATEMENT OF FACTS

6. On or around August 27, 2015 Mr. Fleisig was introduced to E D & F Man by Paragon, his introducing broker, and proceeded to open a futures trading account with E D & F Man.

7. While Mr. Fleisig maintained his accounts at E D & F Man, Paragon was largely responsible for servicing his accounts.

8. Mr. Fleisig would provide Paragon with daily updates on the positions in his account, and when Mr. Fleisig wanted to change the trading limits in his accounts, Paragon would coordinate with E D & F Man in order to do so.

9. In April of 2017, Mr. Fleisig was approached by Mr. Jared Plutzer ("Mr. Plutzer"), an employee in the compliance department of ED & F Man.

10. Mr. Plutzer at the time was not registered with the Commodity Futures Trading Commission, and his registration with the National Futures Association ("NFA") as an associate member and as an associated person were withdrawn in 2011.[1]

---

[1] Mr. Plutzer's NFA Basic Report is attached hereto as *Exhibit 1*.

11. Mr. Plutzer approached Mr. Fleisig and advised him that he had created a unique trading system and was looking to resign his position at ED & F Man and to implement his system.

12. Mr. Plutzer offered to use his system for Mr. Fleisig. Mr. Plutzer had previously interned for Mr. Fleisig and believed Mr. Fleisig would compensate him for his trading system.

13. Mr. Plutzer did not have authority to trade futures contracts for public customers in his position at ED & F Man, but represented that he did to Mr. Fleisig.

14. Neither E D & F Man nor Paragon informed Mr. Fleisig that Mr. Plutzer did not in fact have trading authority.

15. Mr. Plutzer advised Mr. Fleisig of his knowledge of the energy futures markets, which he said came from his experience in the industry.

16. Mr. Plutzer further represented to Mr. Fleisig that he would reimburse Mr. Fleisig for any losses sustained using his trading system.

17. Based on these representations, Mr. Fleisig agreed to let Mr. Plutzer trade his account in exchange for an agreed upon 45% of the profits generated by the trading system.

18. Mr. Fleisig gave Mr. Plutzer his sign-in information for his account on the Ice Mobile Application, a cell phone application for futures trading, and discretionary authority to place trades through the application without consulting Mr. Fleisig.

19. Mr. Plutzer proceeded to trade Mr. Fleisig's account on a daily basis for the next thirty to forty days through the application.

20. Mr. Plutzer placed the majority of trades on his own without Mr. Fleisig's knowledge.

21. Mr. Plutzer began to incur losses in Mr. Fleisig's account within the first few days of trading.

22. By May 19, 2017, Mr. Fleisig's account balance had become negative.

23. Mr. Fleisig was forced to deposit additional funds into his ED & F Man account to cover the negative balance.

24. At the time, Mr. Fleisig had a six-lot trading limit on his account.

25. Mr. Plutzer solicited Mr. Fleisig to send an email request to ED & F Man to increase his trading limits.

26. Mr. Plutzer himself was the ED & F Man employee responsible for the approval of such requests.

27. Mr. Plutzer continued to trade Mr. Fleisig's account until about June 30, 2017.

28. By that time, Mr. Fleisig had lost over $990,000 and decided to terminate Mr. Plutzer's authorization to trade his account.

29. In October of 2018 Mr. Fleisig reached an agreement with defendants by which defendants guaranteed that Mr. Fleisig would be able to trade in order to reduce his deficits. The agreement clearly states that he was to trade the Market maker programs in CME, ICE, and Nasdaq.

30. However after Mr. Fleisig agreed and signed and executed the contract that included a Confession of Judgment order, Defendants defaulted on their end of contract by:

    a. not letting Mr. Fleisig continue to trade the same Market maker programs he was guaranteed to trade, costing Mr. Fleisig revenues;

    b. reducing limits that were not agreed upon, costing Mr. Fleisig revenue and increasing his liabilities;

    c. changing software and forcing him to not only change his trading style but dictating when he could or couldn't trade, which had effects on both revenue and liabilities.

    d. As a result of these breaches, Plaintiffs lost an amount not less than $360,520.00 in revenues and $679,138.00 in liabilities.

    e. Defendants' actions have also harmed Mr. Fleisig reputation in the trading community.

31. In February of 2019 Mr. Fleisig called Mr. Plutzer prior to making a large EFS trade to find out E D & F Man's thoughts and rationale if he made the trade that would reduce E D & F Man's overall risk but increase the overall deficit by over 150k. Mr. Plutzer informed Mr. Fleisig that "they would look favorably" on this and not hold it against Mr. Fleisig's deal. This was a false statement as Mr. Fleisig was shut down days later because the deficit was not reduced enough.

32. As a result of this breach of contract, Mr. Fleisig was unable to trade his way out of his deficit, and suffered an additional One Million Thirty Nine Thousand Six Hundred Fifty Nine Dollars ($1,039,659.00) in damages.

## COUNTS ALLEGED

### COUNT ONE:
### FRAUD IN VIOLATION OF SECTION 6(B) OF THE COMMODITIES EXCHANGE ACT

33. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 32 as if fully set forth herein.

34. Section 6(b) of the Commodities Exchange Act states in part: "It shall be unlawful [to] willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract."[2]

35. Defendants willfully made various material misrepresentations concerning, among other things, the fact that Defendant E D & F Man's compliance officer, Mr. Plutzer, was authorized to trade on behalf of Plaintiffs.

36. Defendants willfully failed to disclose that Mr. Plutzer did not in fact have such authority in his role at E D & F Man.

37. Defendant E D & F Man further deceived Plaintiffs by representing to Plaintiffs that Defendant would reimburse any losses suffered by Plaintiffs in allowing Mr. Plutzer to trade Plaintiffs' account.

38. Defendants knew of the falsity of the misrepresentations when made, and yet made such misrepresentations with the intent of deceiving and defrauding Plaintiffs and inducing Plaintiffs to maintain their funds with Defendants.

39. Plaintiffs did in fact rely on Defendants' misrepresentations and maintained their funds with Defendants.

---

[2] § 6b. Contracts designed to defraud or mislead, 7 USCA § 6b

6

40. Despite Defendants' representations, Mr. Plutzer did not have authority to execute trades on behalf of Plaintiffs, and Defendants did not reimburse Plaintiffs for losses suffered as a result of Mr. Plutzer's trading.

41. As a result of Defendants' fraud, Plaintiffs have been damaged in an amount not yet fully ascertained, but believed to be in excess of Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00).

## COUNT TWO:
## COMMON LAW FRAUD

42. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 41 as if fully set forth herein.

43. The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages.[3]

44. "Where a cause of action or defense is based upon misrepresentation, fraud, mistake, willful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail."[4]

45. Defendants willfully made various material misrepresentations concerning, among other things, the fact that Defendant E D & F Man's compliance officer, Mr. Plutzer, was authorized to trade on behalf of Plaintiffs.

46. Defendants willfully failed to disclose that Mr. Plutzer did not in fact have such authority in his role at E D & F Man.

---

[3] Eurycleia Partners, LP v. Seward & Kissel, LLP, 910 N.E.2d 976, 979, 883 N.Y.S.2d 147, 150, 12 N.Y.3d 553, 559 [NY, 2009].

[4] N.Y. CPLR § 3016 (McKinney 2018) ("Particularity in specific actions").

47. Defendant E D & F Man further deceived Plaintiffs by representing to Plaintiffs that Defendant would reimburse any losses suffered by Plaintiffs in allowing Mr. Plutzer to trade Plaintiffs' account.

48. Defendants knew of the falsity of the misrepresentations when made, and yet made such misrepresentations with the intent of deceiving and defrauding Plaintiffs and inducing Plaintiffs to maintain his funds with Defendants.

49. Plaintiffs did in fact rely on Defendants' misrepresentations and maintained their funds with Defendants.

50. Despite Defendants' representations, Mr. Plutzer did not have authority to execute trades on behalf of Plaintiffs, and Defendants did not reimburse Plaintiffs for losses suffered as a result of Mr. Plutzer's trading.

51. As a result of Defendants' fraud, Plaintiffs have been damaged in an amount not yet fully ascertained, but believed to be in excess of Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00).

## COUNT THREE: NEGLIGENCE

52. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 51 as if fully set forth herein.

53. Defendants owed Plaintiffs, at a minimum, a duty of reasonable and ordinary care in dealing with Plaintiffs, including ensuring that Plaintiffs' accounts not be traded by an officer of Defendants with no authority to trade.

54. Plaintiffs' accounts were handled in a negligent manner incompatible with the purported professional skill and ability of Defendants and the purported professional competence of Defendants.

55. Defendants negligently allowed Mr. Plutzer, an unregistered compliance officer, to trade Plaintiffs' accounts with discretionary authority.

56. As a proximate result of Defendants' negligence, Plaintiffs have sustained substantial monetary damages.

57. As a result of Defendants' negligence, Plaintiffs have been damaged in an amount not yet fully ascertained, but believed to be in excess of Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00).

## COUNT FOUR:
## BREACH OF FIDUCIARY DUTY

58. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 57 as if fully set forth herein.

59. In order to establish a breach of fiduciary duty, "a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct."[5]

60. A fiduciary relationship "exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relationship."[6]

61. Defendants owed an affirmative duty of care and loyalty to their customers. That duty is heightened when the customers are unsophisticated or the broker has discretionary authority.

---

[5] Kurtzman v. Bergstol, 40 A.D.3d 588, 590 (2d Dep't, 2007).
[6] EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 832 N.E.2d 26 [N.Y. 2011] (*citing* Restatement [Second] of Torts § 874, Comment *a*.).

9

62. Defendants knew or should have known that Plaintiffs placed their complete trust and confidence in Defendants to protect Plaintiffs' money in a manner consistent with their investment objectives, thereby placing Defendants in a fiduciary relationship with Plaintiffs.

63. Defendants breached their fiduciary duty to Plaintiffs under applicable state and federal securities laws and exchange rules in a reckless, willful, and wanton manner and with total disregard for the legal and fiduciary rights of Plaintiffs, by allowing an unregistered compliance officer to trade Plaintiffs' accounts with discretionary authority.

64. As a result of Defendants' breach of fiduciary duty, Plaintiffs have been damaged in an amount not yet fully ascertained, but believed to be in excess of Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00).

## COUNT FIVE:
## BREACH OF CONTRACT

65. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 64 as if fully set forth herein.

66. The elements of a breach of contract claim are formation of a contract, performance by one party, failure to perform by another, and resulting damages.[7]

67. The parties entered into an agreement when Plaintiffs opened up investment accounts with Defendants under terms whereby Defendants agreed to properly handle Plaintiffs' accounts in accordance with all relevant rules and regulations of NFA and its Conduct Rules, as well as the Commodities Exchange Act and the rules and regulations promulgated thereunder.

68. Plaintiffs have performed all conditions precedent to bringing this action for breach of contract.

---

[7] New York State Workers' Compensation Bd. v. SGRisk, LLC, 983 N.Y.S.2d 642, 648, 116 A.D.3d 1148, 1153 [NY App. 3rd Dept., 2014].

69. Defendants have breached their contractual relationship with Plaintiffs in the following manner:

  a. By negligently performing duties of supervision and due care with respect to recommendations to induce trading activity and the making of misrepresentations and omissions as more fully set forth above.

  b. By breaching the fiduciary duty owed to Plaintiffs by reason of the contractual relationship and the duties, laws, rules, and regulations thereby incorporated which govern the transactions in Plaintiffs' account.

  c. By knowingly violating state and federal laws.

70. Plaintiffs and Defendants further entered into a contract in October of 2018, by which Defendants guaranteed that Plaintiffs would be able to trade at certain trading limits.

71. Defendants thereafter breached this contract by coordinating to reduce Plaintiffs' trading limits in contravention of the agreement.

72. As a result of Defendants' breach of contract, Plaintiffs have been damaged in an amount not yet fully ascertained, but believed to be in excess of Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00).

## COUNT SIX:
## BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING

73. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 72 as if fully set forth herein.

74. "For a complaint to state a cause of action alleging breach of an implied covenant of good faith and fair dealing, the plaintiff must allege facts which tend to show that the

defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff."[8]

75. As a result of their contracts with Defendants, Plaintiffs expected to obtain the benefit of sound investment advice, and the benefit of their accounts being traded by a registered CTA.

76. Defendants withheld a benefit from Plaintiffs in allowing an unregistered compliance officer to trade Plaintiffs' accounts.

77. As a result of Defendants' breach of the duty of good faith and fair dealing, Plaintiffs have been damaged in an amount not yet fully ascertained, but believed to be in excess of Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00).

## COUNT SEVEN:
## MISREPRESENTATION AND OMISSION

78. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 77 as if fully set forth herein.

79. A claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."[9]

80. Defendants were Plaintiffs' commodity trading advisor and introducing broker, and thus had a special duty to impart correct information to Plaintiffs regarding their investments.

---

[8] Aventine Inv. Management, Inc. v. Canadian Imperial Bank of Commerce, 265 A.D.2d 513, 514 (2d Dep't, 1999).
[9] J.A.O. Acquisition Corp. v. Stavitsky, 863 N.E.2d 585, 587, 831 N.Y.S.2d 364, 366, 8 N.Y.3d 144, 148 [NY 2007].

81. Defendants gave incorrect information to Plaintiffs when Mr. Plutzer represented to Plaintiffs that he had authority to trade Plaintiffs' accounts.

82. Plaintiffs reasonably relied on this information in making their decisions to invest their money with Defendants.

83. As a result of Defendants' misrepresentations and omissions, Plaintiffs have been damaged in an amount not yet fully ascertained, but believed to be in excess of Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00).

**WHEREFORE** Claimant requests the following relief:

a. On the First Count, awarding compensatory damages in an amount to be determined at trial but not less than Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00).

b. On the Second Count, awarding compensatory damages in an amount to be determined at trial but not less than Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00).

c. On the Third Count awarding compensatory damages in an amount to be determined at trial but not less than Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00).

d. On the Fourth Count awarding compensatory damages in an amount to be determined at trial but not less than Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00).

e. On the Fifth Count, awarding compensatory damages in an amount to be determined at trial but not less than Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00).

f. On the Sixth Count, awarding compensatory damages in an amount to be determined at trial but not less than Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00).

g. On the Seventh Count, awarding compensatory damages in an amount to be determined at trial but not less than Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00).

h. As to all Counts, awarding interest accruing from the date of the breach, which Plaintiffs allege to be no later than the date on which Mr. Plutzer began trading Plaintiffs accounts.

i. As to all Counts, holding Defendant E D & F Man liable under the doctrine of respondeat superior.[10]

j. As to all Counts, awarding Claimant's compensatory damages totaling an amount in excess of Two Million Twenty Nine Thousand Six Hundred Fifty Nine Dollars ($2,029,659.00) plus interest, costs, reasonable attorneys' fees, and punitive damages.

k. As to all Counts, awarding such other and further relief as the Arbitrators deem just and fair.

Dated: New York, New York
September 4, 2019

Respectfully submitted

*[signature]*

CONWAY & CONWAY
Kevin P. Conway (6946)
Attorney for Plaintiffs
122 E 42nd Street, Suite 1612
New York, New York 10168
Tel: (212) 938-1080
Fax (212) 938-1207

---

[10] *See* Selmani v. City of New York, 984 N.Y.S.2d 114, 115–16, 116 A.D.3d 943, 944 (N.Y.A.D. 2 Dept.2014)