```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
JONATHAN FLEISIG and CONDOR ALPHA         :
ASSET MANAGEMENT,                         :
                                          :        19cv8217 (DLC)
                          Plaintiffs,     :
                                          :        OPINION AND ORDER
              -v-                         :
                                          :
ED&F MAN CAPITAL MARKETS, INC.,           :
                                          :
                          Defendant.      :
                                          :
----------------------------------------- X
```

APPEARANCES:

For plaintiffs and counterclaim defendants Jonathan Fleisig and Condor Alpha Asset Management:
Kevin P. Conway
Conway & Conway
99 Park Avenue, 25th Floor
New York, NY 10016

For defendant and counterclaim plaintiff ED&F Man Capital Markets, Inc.:
Therese M. Doherty
LisaMarie Collins
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
666 Third Avenue
New York, NY 10017

DENISE COTE, District Judge:

   Defendant and counterclaim plaintiff ED&F Man Capital Markets, Inc. ("MCM") has sought, as the prevailing party in this litigation, $1,402,234.32 in attorneys' fees and costs pursuant to a series of contracts with plaintiffs Jonathan Fleisig ("Fleisig") and Condor Alpha Asset Management

1

("Condor"). For the following reasons, MCM's application for attorneys' fees and costs is granted.

## Background

The background of this litigation is comprehensively set forth in the Opinions of this Court listed below and is summarized only briefly here. In broad strokes, Condor and Fleisig brought this action against MCM, its clearing broker, and Paragon Global Markets, LLC ("Paragon"), its introducing broker, in 2019. The plaintiffs alleged the defendants had breached its contracts with them and committed commercial torts against them by allowing Jared Plutzer, an MCM risk officer, to trade natural gas futures in Condor's account, and then by closing Condor's account with MCM in February 2019. MCM alleged counterclaims for breach of contract against the plaintiffs, contending that Condor had breached its Customer Agreement with MCM and several agreements with MCM to reduce the deficit in its account and that Fleisig had breached his guarantee of Condor's debt.

Paragon moved to dismiss the plaintiffs' claims against it, and in an Opinion and Order of June 12, 2020, the claims against Paragon were dismissed. <u>Fleisig v. ED&F Man Capital Markets, Inc.</u>, No. 19cv8217, 2020 WL 3127875 (S.D.N.Y. June 12, 2020). The plaintiffs' claims against MCM and MCM's counterclaims

against the plaintiffs proceeded to a bench trial in June 2021. In an Opinion and Order of June 30, 2021, the Court ruled for MCM on all claims and awarded damages to MCM.  Fleisig v. ED&F Man Capital Markets, Inc., No. 19cv8217, 2021 WL 2678675, at *14 (S.D.N.Y. June 30, 2021).  The Court's June 30, 2021 Opinion also awarded -- pursuant to the customer agreement between MCM and Condor and the guaranty agreement between MCM and Fleisig -- MCM its attorneys' fees and costs associated with enforcing the customer agreement between MCM and Condor.  Id.

MCM filed its motion for attorneys' fees and costs on July 12.  In its submissions, it has requested a total award of $1,402,234.32,[1] reflecting approximately 70% of the total amount of attorneys' fees and costs associated with recouping the damages it incurred as a result of the conduct of Condor and Fleisig.  This sum represents fees and costs incurred in this action, related state court litigation in several states, and ancillary efforts to locate and recover assets belonging to Condor and Fleisig.  The motion became fully submitted on September 16.

---

[1] In its initial submissions, MCM requested an award of $1,403,234.32, but reduced its request to $1,402,234.32 in its reply submission after the plaintiffs identified certain billing entries that were mistakenly attributed to this matter.

**Discussion**

"In the American system of justice, 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr., 925 F.3d 63, 67 (2d Cir. 2019) (quoting Alyeska Pipeline Servs. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975)).  But "parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law."  U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004) (citation omitted).  "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008).

When a prevailing party seeks fee-shifting pursuant to a contract, "the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable."  F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987).

4

Assessing whether a request for attorneys' fees is reasonable involves use of the "lodestar" method. Id.

The lodestar method involves "determining a reasonable hourly rate by considering all pertinent factors . . . and then multiplying that rate by the number of hours reasonably expended to determine the presumptively reasonable fee." Lilly v. City of New York, 934 F.3d 222, 230 (2d Cir. 2019). "A reasonable hourly rate is a rate 'in line with prevailing rates in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir. 2006) (quoting Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984)). In order to facilitate this review, "attorneys are required to keep and submit contemporaneous records with their fee applications, absent unusual circumstances outside the attorney's control." Restivo v. Hessemann, 846 F.3d 547, 591 (2d Cir. 2017).

The Supreme Court has instructed that fee disputes "should not result in a second major litigation." Fox v. Vice, 563 U.S. 826, 838 (2011) (citation omitted). This is because "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." Id. As a result, "trial courts may take into account their overall sense of a suit" in

5

assessing fees, "and may use estimates in calculating and allocating an attorney's time."  Id.  Ultimately, a district court has "broad discretion" in "award[ing] attorneys' fees under a valid contractual authorization."  In re Goldstein, 430 F.3d 106, 110 (2d Cir. 2005) (citation omitted).

MCM has provided a calculation of attorneys' fees based on the lodestar method and asserts that method produces an attorneys' fee award of $1,353,580.  Accounting for costs, MCM requests a total award of $1,402,234.32.  The plaintiffs concede that MCM is contractually entitled to recover attorneys' fees and costs from them.  But they dispute MCM's calculation of the appropriate sum.

The plaintiffs' objections can be grouped into four categories: first, that MCM's fee request is unreasonably high given the sum of money at stake in this litigation; second, that the Court should categorically exclude MCM's requests for attorneys' fees related to certain projects; third, that MCM's hourly rates are excessive; and fourth, that the Court should apply an across-the-board reduction to the number of hours proposed by MCM because MCM's attorneys billed an excessive number of hours and improperly submitted block-billed and vague time entries.  None of these objections has merit.

Condor and Fleisig contend that MCM's fee request is unreasonably high because it stood to recover only $803,113.81 from this litigation and incurred attorneys' fees of nearly twice that. This argument is unconvincing. First, MCM stood to recover not $801,113.81, but over $2.4 million, because judgment was entered against both Condor pursuant to the customer agreement and Fleisig pursuant to the guaranty agreement. It is true that this Court's judgment against Fleisig was offset by a confession of judgment for $959,377.76 entered against Fleisig in New York state court, but even excluding that sum, MCM stood to recover more in damages than it expended in attorneys' fees.

But more fundamentally, while it is true that courts will "rarely find reasonable an award to a plaintiff that exceeds the amount involved in the litigation," Krear, 810 F.2d at 1264, this is not an ordinary case. MCM incurred substantial attorneys' fees largely because of the plaintiffs' own actions. Even though the plaintiffs' liability for Condor's losses was clear under their contracts with MCM, the plaintiffs undertook extensive efforts to avoid paying to MCM the sum they owed. Fleisig refused to satisfy a judgment entered against him in New York state court, requiring MCM to collect from a third-party guarantor of Condor and pursue ancillary litigation in other states in an effort to collect on that judgment. The plaintiffs

also filed this lawsuit and aggressively litigated it through trial, which nonetheless resulted in a judgment in favor of MCM. In short, MCM has requested a large attorneys' fee award not because it seeks a windfall or made an economically irrational decision to pursue litigation, but because the plaintiffs' own conduct has required MCM to litigate tooth and nail across multiple fora to collect what it is owed.  Under these circumstances, reducing MCM's fee award on the grounds of disproportionality would reward the plaintiffs for attempting to evade their obligations.

The plaintiffs also object to MCM's request for fees related to several ancillary issues connected to the underlying dispute in this litigation, including attorneys' fees related to an investigation of former MCM employee Plutzer, MCM's efforts to collect funds from a guarantor of Condor, and certain attorneys' fees incurred before MCM closed Condor's account in February 2019.  All of these objections are unpersuasive.  The fee-shifting provision in the customer agreement between Condor and MCM is broadly worded, allowing MCM to collect "any direct or indirect costs of . . . enforcing any of [its] rights" under the customer agreement.  MCM has demonstrated that each of these issues fall within this broadly worded clause, and the plaintiffs have not presented a convincing argument to the

8

contrary. Moreover, the plaintiffs made strategic decisions that made MCM's enforcement of its contractual rights substantially more complex and burdensome. It was necessary for MCM to undertake each of these actions to enforce its contractual rights against the plaintiffs.

The plaintiffs' assertion that MCM's fee award should be reduced because of its counsel's excessive hourly rates also lacks merit. MCM has requested hourly rates ranging from $1000 per hour for senior partners to $400 per hour for junior associates, reflecting a discount of approximately 10% on each attorney's advertised billing rate. MCM was represented in this case by experienced commercial litigators affiliated with a large law firm, and the rates MCM has requested are in line with the prevailing rates for comparable attorneys in this District. See, e.g., U.S., ex rel. Fox Rx, Inc. v. Omnicare, Inc., No. 12cv275(DLC), 2015 WL 1726474, at *2-3 (S.D.N.Y. Apr. 15, 2015). Accordingly, the plaintiffs' request to reduce the hourly rates awarded to MCM's counsel is denied.

Finally, the plaintiffs unconvincingly contend that MCM's fee award should be reduced because of excessive billing and improper block billing. The plaintiffs assert, for instance, that MCM's attorneys billed an excessive number of hours in conjunction with preparing for the deposition of Fleisig and for

trial.  But discovery in this case was voluminous, involving tens of thousands of pages of documents.  Given the voluminous discovery, proper preparation for critical events in this case -- such as the plaintiff's deposition and the bench trial -- was necessarily a time-consuming process.  Moreover, the diligent efforts of MCM's counsel resulted in a successful outcome on all claims.  "The most important factor in determining the reasonableness of a fee is the degree of success obtained," Pino v. Locascio, 101 F.3d 235, 237 (2d Cir. 1996), so the outcome of this case weighs in favor of granting MCM's request in its entirety.

Finally, the objection to MCM's counsel's use of "block billing" is meritless.  "The use of 'block billing' . . . is perfectly reasonable" where, as here, "the specific tasks in each 'block' are described with sufficient detail and clarity to confirm the reasonableness of the work performed."  Omnicare, 2015 WL 1726474, at *3 (citation omitted).

## **Conclusion**

MCM's application for an award of attorneys' fees and costs is granted. An Order entering judgment for MCM shall accompany this Opinion.

Dated:    New York, New York
         September 29, 2021

```
                              _____
                                    DENISE COTE
                              United States District Judge
```